IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LAMONT CARTER,

    Petitioner,                    No. CIV S-08-2103 GGH P

    vs.

JIM MACDONALD, et al.,

    Respondents.             <u>ORDER</u>

_____/

*<u>Introduction and Summary</u>*

        This habeas case presents the interesting state law question – by what standard under California law does one measure the "fear" necessary for the crime of robbery when force in taking property is not utilized. The Court of Appeal answered the question by holding that the standard is a subjective one, i.e., did the victim turn over property to another out of his own sincerely held belief that he might be hurt or in danger. However interesting the question of state law may be, the state court has spoken, and its ruling precipitates a denial of all claims in this federal habeas petition. The undersigned can find no federal constitutional requirement for an objective finding of fear in a robbery situation.

        This habeas action proceeds before the undersigned pursuant to 28 U.S.C. § 636(c) (consent to proceed before a magistrate judge).

1

*Issues*

    1. Insufficient Evidence of the Fear Element of Robbery; Failure to Require Evidence of an Objective Component of Fear, i.e., a Reasonable Victim Would Have Felt Fear

    2. Sua Sponte Duty of the Court to Instruct on the Objective Component of Fear; [Claims 3 and 4 are identical claims]

    3. Sua Sponte Duty of the Court to Instruct on the Lesser Offenses of Petty Theft and Theft by Trick;

    4. Sua Sponte Duty of the Court to Instruct on Petty Theft and Theft by False Pretenses

In discussing the issues, the undersigned will break out of issue number one the two issues of : (a) whether federal law requires an objective standard for finding fear in a robbery situation; and (b) if not, was there sufficient evidence of subjective fear. Issues 3 and 4 will be combined as they are essentially identical issues.

*AEDPA Standard*

The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

\\\\\

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76 , 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 10, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state

3

court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

It is also important to emphasize in this case that the federal court does not have authority to determine the "correct" interpretation of state law. Such pronouncements are for the state courts only except in the extraordinary situation where the interpretation of state law by the state court(s) is an arbitrary attempt to avoid or obfuscate the federal issues present in the case. Bonin v. Calderon, 59 F.3d 815, 841 (9th Cir. 1995); Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989). "State court" includes the state court(s) which ruled in the case at bar. See Bradshaw v. Richey, 546 U.S. 74, 76, 126 S.Ct. 602 (2005).

*Facts*

The State Court of Appeal found the following facts which the undersigned has confirmed by a reading of the relatively short transcript in this case:

> On a Sunday afternoon in November 2005, the 17-year-old victim was waiting at the 16th Street light rail stop for a train to Rancho Cordova. There were about three other people waiting some distance away. The defendant approached him and offered to give him a ride for $5. The defendant was slightly shorter than the victim but with a more solid build, and was 27 years old. FN1 The victim said he did not have any cash. The defendant asked if he could use the victim's cell phone. After the victim handed it to him, however, the defendant simply stood there without using it. When the victim asked if he were going to place a call, the defendant told him to "hold on" and gestured the victim away from him.
>
> FN1. In reporting the crime, the victim had believed the defendant was taller than him.
>
> When the train to Rancho Cordova arrived, the victim got on. The defendant only put a foot on a step without climbing up. The victim asked the defendant to return the cell phone. Defendant said the victim could have it back after giving him money.FN2 The victim got off the train and offered him $5. The defendant noticed that the victim had more than $5 in his wallet and demanded all of it for the return of the cell phone. There was $19 in the wallet.
>
> FN2. In closing argument, the prosecutor cited this point as the commencement of the robbery.
>
> At this point, the victim "was feeling pretty scared, that [the defendant] could possibly have a weapon on him and that I could get hurt if I [didn't] do what he [said]." The defendant did not seem forceful but was getting more determined to obtain money from the victim; he was talking more loudly and "fearly [ sic ]" to

the victim. The victim felt "the only way I could get away from there without being hurt was to give him what he wanted."

The victim handed the cash and the wallet to the defendant, who returned the wallet after looking through the cards. He now demanded an additional $20 from the victim. The victim held out his messenger bag with its flap open to show him that he did not have any more money. The defendant rooted around through it and removed a small umbrella, announcing that " 'the umbrella is mine' " before putting it in his pocket.  According to the victim, "[a]t that point I was more scared, and I was more anxious to get away from him than I was worried about my possessions."

The defendant motioned for the victim to follow him across the tracks. No one else was waiting there. He asked how the victim could get more money. The victim suggested that he could call his girlfriend and ask her to bring it. The defendant took the cell phone out of his pocket. When the victim tried to take the phone from his hand to place a call, the defendant tightened his grip and reasserted that the victim would not get it back until he gave the defendant more money.

*2 A train heading the other direction approached the stop. Although still frightened, the victim unsuccessfully attempted to grab the phone out of the defendant's hand, then jumped on the train. When he saw that the defendant had followed him onto the train with a "mean look," the victim quickly got off just before it departed. He fled up 16th Street and across Fremont Park to a coffee shop, where he was able to summon the police. When the officer arrived, the victim was still trembling. Even though there had not been any weapon or threats involved, he had been "absolutely" afraid of the defendant when he surrendered his property.

An officer hearing a broadcast about the incident saw the defendant walking away from the Alkali Flat stop. He detained him. The victim, brought to the scene, identified him as the person who had taken his property. The defendant still had the property on his person.

People v. Carter, 2007 WL 236747 (Cal. App. 2007).

*Discussion*

**Claim 1– Sufficiency of the Evidence**

A.  The Court Has No Authority to Review the State Law Decision on Subjective Fear Belief; There Is No Federal Requirement for an Objective Fear Standard

In order to commit robbery in California, the defendant must exercise force or instill fear in the victim when tasking the property.  Cal. Penal Code § 211.  In a lengthy analysis of California law, the state Court of Appeal determined that the element of "fear" in California's

5

robbery statute was not to be measured by an objective component, i.e. would a reasonable person have felt fear from the defendant, but simply by the subjective standard as to whether the victim actually felt fear. There is no point in repeating the entire analysis here. Suffice it to say that the Court's holding cannot be construed as an arbitrary attempt to avoid or obfuscate the federal issues in this claim – sufficiency of the evidence.

As emphasized in the legal standards section, the undersigned has no authority to re-determine issues of state law in a federal habeas action. Therefore, petitioner's request that this court determine otherwise is denied.

### B. Whether There Was Sufficient Evidence to Meet the Subjective Standard

Generally, when a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found "the essential elements of the crime" proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Under Jackson, the court reviews the entire record when the sufficiency of the evidence is challenged on habeas. Adamson v. Ricketts, 758 F.2d 441, 448 n. 11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts." Jackson, 443 U.S. at 319, 99 S. Ct. at 2789. "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could have reached the same conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).

If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction. McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994). The fact that petitioner can construct from the evidence alternative scenarios at odds with the verdict does not mean that the evidence was insufficient, i.e., that no reasonable trier of fact could have found the conviction scenario beyond a reasonable doubt.

> In reviewing the sufficiency of the evidence supporting a conviction, we search the record to determine "whether a reasonable jury, after viewing the evidence in the light most favorable to the government, could have found the defendants guilty beyond a reasonable doubt of each essential element of the crime charged." United States v. Douglass, 780 F.2d 1472, 1476 (9th Cir.1986). *The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict.* United States v. Fleishman, 684 F.2d 1329, 1340 (9th Cir.), cert. denied, 459 U.S. 1044, 103 S. Ct. 464, 74 L. Ed.2d 614 (1982); United States v. Federico, 658 F.2d 1337, 1343 (9th Cir.1981), overruled on other grounds, United States v. De Bright, 730 F.2d 1255, 1259 (9th Cir.1984) (en banc).

United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991)(emphasis added).

Superimposed on these already stringent insufficiency standards is the AEDPA requirement that even if a federal court were to initially find on its own that no reasonable jury should have arrived at its conclusion, the federal court must also determine that the state appellate court not have affirmed the verdict under the Jackson standard in the absence of an unreasonable determination. Juan H. v. Allen, 408 F.3d 1262 (9th Cir. 2005).

The Court of Appeal determined:

> In short, we do not discern any reason to accept this novel departure from the law of robbery. As a result, we can make short shrift of the defendant's claim that the evidence of fear is insufficient because the victim was unreasonably in a state of fear. We have related the abundant evidence of the victim's subjective fear. That contrary inferences might be drawn from the evidence (a questionable proposition) does not affect the substantial nature of the evidence of subjective fear.

People v. Carter, 2009 WL 2367647 at *4.

Had this criminal event been limited to the taking of the first five dollars, the undersigned would have substantial doubt that even the standard of subjective fear had been met. However, the robbery involves the taking of all the monies and the cell phone in various stages, and the credible victim's increasingly fearful reaction to the course of events. The undersigned cannot say that the sufficiency analysis of the Court of Appeal was unreasonable.

### *Claim 2- The Trial Court Had a Sua Sponte Duty to Instruct on Reasonable Fear*

This claim is premised on the errant belief that state law required a reasonable fear in order for a robbery to occur, i.e., that the reasonable person would have been afraid. Since the

premise is incorrect, the claim must fail.

### *Claim 3 and 4- The Trial Court Had a Sua Sponte Duty to Instruct on the Lesser Included Offenses of Petty Theft or Theft by Trick or Theft Under False Premises*

Grand Theft occurs in different circumstances, one of which is when property is taken from the person of another (without force or fear). Cal. Penal Code § 487(c). The jury was instructed on this theory. The jury clearly rejected the "without force or fear" when it found petitioner guilty of robbery. Nevertheless, petitioner asserts that he was entitled to other sua sponte instructions on petty theft or theft under false pretenses or theft by trick, none of which require that the property at issue be directly taken from the person of another.

At the outset, the court notes that in a non-capital case, such as the one presented here, the "[f]ailure of a state court to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding." Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir.1984) (quoting James v. Reese, 546 F.2d 325, 327 (9th Cir.1976) ( per curiam )). While the United States Supreme Court, in Beck v. Alabama, 447 U.S. 625, 638 (1980), has held that criminal defendants possess a constitutional right to have the jury instructed on a lesser included offense in a capital murder case, the Beck court also expressly reserved the question of whether due process mandates the application of the same right in a non-capital case. See Beck, 447 U.S. at 638, n. 7; Solis v. Garcia, 219 F.3d 922, 928 (9th Cir.2000). Thus, in a non-capital case, the failure of a trial court to sua sponte instruct on a lesser included offense does not present a federal constitutional question that would warrant habeas corpus relief. Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir.1998).

The Ninth Circuit in Solis noted that there might exist an exception to this general rule for adequate jury instructions on a defendant's theory of defense. Solis, 219 F.3d at 929 (citing Bashor, 730 F.2d at 1240, but noting that Windham, 163 F.3d at 1106, mentioned no such exception to the general rule).

\\\\\

Even if a "theory of the defense" exception exists, it is not applicable, as the California Court of Appeal found, because no evidence would support a theory that the property at issue, when viewed in the context of the entire case, was not "taken from the person of another." This being the case, a sua sponte instruction involving petty theft, or taking property by false pretenses or larceny by trick, would not have been appropriate because there was no evidence to support these offenses, i.e., the taking from the person directly was undisputed on the record. People v. Hovarter, 44 Cal.4th 983, 1021 (2008) (an instruction on a defense theory need be given only if there is evidence that supports it).

*Conclusion*

The petition for writ of habeas corpus is denied. Judgment shall be entered in favor of respondent.

The undersigned has determined that should an appeal be filed, no certificate of appealability will be issued.

DATED: 12/02/09                    /s/ Gregory G. Hollows
_____
UNITED STATES MAGISTRATE JUDGE

GGH:gh:035
cart2103.ord